IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KENNEDY THORNE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | No. 07 C 2251 |
| | ) | |
| v. | ) | Wayne R. Andersen |
| | ) | District Judge |
| JEWEL FOOD STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on cross-motions for summary judgment by plaintiff Kennedy Thorne ("Thorne" or "Plaintiff") and defendant Jewel Foods, Inc. ("Jewel" or "Defendant"). For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

## BACKGROUND

On February 8, 1988, Jewel hired Thorne to work as a forklift driver in its Dry Grocery Building located in Melrose Park, Illinois. (Def.'s Am. Stmt of Facts ["Def.'s SOF"] ¶¶ 1, 3; Pl.'s Resp. to Def.'s SOF ¶¶ 1, 3). Defendant contends that "[b]etween February 1988 . . . and June 30, 2003 (when Plaintiff filed his first EEOC Charge), Jewel issued fifty-two (52) disciplinary notices to Plaintiff relating to productivity, unsafe work, and failure to follow Company policies and procedures," and that "[f]ifteen (15) of the disciplinary notices . . . related to Plaintiff's failure to properly swipe the time clock." (Def.'s SOF ¶¶ 5, 6). In Thorne's response to these statements of fact, he states that he "[d]isagrees and objects with these write ups," that "they have no merit to the tier (sic) of Facts," and that his "personnel file has been compromised." (Pl.'s Resp. to Def.'s SOF ¶¶ 5, 6).

Plaintiff filed two EEOC Charges in 2003. He filed EEOC Charge No. 210-2003-33683 on June 30, 2003, alleging that Jewel discriminated against him on the basis of his race because a less senior Caucasian associate was given an "approved volume" day off. (Def.'s SOF ¶ 7). Plaintiff filed EEOC Charge No. 210-2004-00011 on October 1, 2003, alleging that Jewel retaliated against him for his June 30 Charge by failing to give him a preferred job assignment. (Def.'s SOF ¶ 8). Both of the aforementioned charges were dismissed by the EEOC, and Thorne received a right to sue letter for each charge. (Def.'s SOF ¶¶ 7, 8; Pl.'s Resp. to Def.'s SOF ¶¶ 7, 8). The parties dispute whether Thorne's supervisors and managers were aware that Thorne had filed the 2003 Charges. (Def.'s SOF ¶ 9; Pl.'s Resp. to Def.'s SOF ¶ 9). Plaintiff indicates that he also filed a third EEOC Charge, No. 440-2006-90226, which Defendant does not dispute. (Pl.'s Second Summ. J. Request at 2; Def.'s Resp. to Pl.'s Second Summ. J. Request at 3).

In October 2003, Jewel unilaterally issued the Melrose Park Distribution Center Policy and Procedure Manual (the "Manual"), containing Jewel's harassment and discrimination policies, setting forth internal complaint procedures, explaining certain rules regarding "swiping" in and out at the beginning and end of work days and meal periods, and establishing new progressive discipline policies. (Def.'s SOF ¶¶ 11-13; Pl.'s Resp. to Def.'s SOF ¶11-13). The relevant discipline policies were as follows:

> A. The 5 STEP Discipline Process for Productivity, which applies only when an associate's daily productivity is "less than 95% but more than 70% of [the] engineered standard.
>
> B. The 5 STEP Disciplinary Process [for] Unsatisfactory Employment, which applies, among other circumstances, upon: (1) "failure to follow established work process;" and (2) "failure to swipe in and out from work at start of day, start of authorized meal period, end of authorized meal period, or end of workday;"
>
> C. The 2 STEP Disciplinary Process for More Serious Employment Issues, which applies, among other things, to gross negligence; and

2

> D. The 1 STEP Disciplinary Process for Most Serious Employment Issues, which applies, among other things, to falsification of company documents and "profane, abusive, physically threatening, or harassing misconduct."

(Def.'s SOF ¶ 13; Pl.'s Resp. to Def.'s Am. Stmt of Facts ¶13).

Defendant states that between June 30, 2003 (the date of Plaintiff's first EEOC Charge) and July 2005, Jewel issued only four (4) other disciplinary notices to Plaintiff relating to issues other than attendance. (Def.'s SOF ¶ 16). Plaintiff objects to that assertion, claiming that his Personnel file "has been compromised" with "many documents added and some deleted," though it is unclear whether Plaintiff believes the number of disciplinary notices should be higher or lower than that stated by Defendant. (Pl.'s Resp. to Def.'s SOF ¶ 16).

According to Defendant, there were two incidents in 2004 which subjected Plaintiff to immediate termination under the last of the four disciplinary processes set forth above – one incident in which Plaintiff falsified a company document, and one incident in which Plaintiff made inappropriate and threatening statements to supervisors and a manager. (Def.'s SOF ¶¶14, 15). Defendant states that, in both instances, Jewel decided to apply less severe consequences, first giving Plaintiff a one-day suspension, and then allowing Plaintiff to work under the terms of a "Conditional Employment" letter. *Id*. Both decisions were approved by John Yasak, Director of Distribution, and Kevin Durkin, Manager. *Id*. Plaintiff denies that he falsified company documents or threatened anyone. (Pl.'s Resp. to Def.'s SOF ¶¶ 14, 15).

In 2005, Plaintiff joined the Dry Grocery Building safety committee, and various members of this committee, including Plaintiff, raised concerns about certain safety issues. (Def.'s SOF ¶¶ 17, 18).

On August 9, 2005, Plaintiff received a verbal warning from Jewel Supervisor Dermot Ryan ("Ryan") because he took a 36 minute lunch, and this constituted Step 1 in the 5 STEP Disciplinary Process [for] Unsatisfactory Employment (the "5-Step Process"). (Def.'s SOF ¶ 19,

3

Ex. 15 ¶3; Pl.'s Resp. to Def.'s SOF ¶ 19). Plaintiff contends that the August 9 verbal warning was "thrown out," though the only evidence he offers in support of this assertion is to repeat the statement that his "Personnel File has been compromised." (Def.'s SOF ¶20; Pl.'s Resp. to Def.'s SOF ¶ 20).

On September 16, 2005, Plaintiff used an improper code in his forklift computer, which resulted in a first written warning by Jewel Supervisor Joe Borawski ("Borawski"), constituting Step 2 in the 5-Step Process. (Def.'s SOF ¶ 21). In Plaintiff's deposition, he testified that he believed the supervisor who issued this written warning did so not because of Plaintiff's race or 2003 EEOC Charges, but because the improper code made Jewel look less productive. (Def.'s SOF ¶ 21, Ex. 3 pp. 327:2-22). Plaintiff does not dispute this point. (Pl.'s Resp. to Def.'s SOF ¶ 21).

On November 10, 2005, Plaintiff received a second written warning from Ryan for taking a 40 minute lunch on November 9, 2005, constituting Step 3 in the aforementioned 5-Step Process. (Def.'s SOF ¶ 23). Plaintiff maintains that he punched in and out for lunch properly. (Pl.'s Resp. to Def.'s SOF ¶ 23).

On February 9, 2006, Plaintiff received a one-day suspension warning because he filed to swipe in after lunch on February 8, 2006, which constituted Step 4 of the 5-Step Process. (Def.'s SOF ¶ 24). Plaintiff filed a grievance in relation to this incident on February 13 or 17, 2006, pursuant to the collective bargaining agreement. (Def.'s SOF ¶ 26; Pl.'s Resp. to Def.'s SOF ¶ 24, 26). On May 10, 2006, Plaintiff, Local 710, and Jewel held a hearing relating to this grievance, but were unable to resolve it. (Def.'s SOF ¶ 26; Pl.'s Resp. to Def.'s SOF ¶ 26). Plaintiff contends that his one-day suspension never occurred, meaning that the fourth step in the 5-Step Process was never actually fulfilled. (Pl.'s Resp. to Def.'s SOF ¶ 24).

4

On May 9, 2006, Plaintiff failed to swipe out for lunch, a violation constituting Step 5 of the 5-Step Process, subjecting Plaintiff to discharge. (Def.'s SOF ¶ 27). Plaintiff does not dispute that he failed to swipe out for lunch on May 9, 2006. (Pl.'s Resp. to Def.'s SOF ¶ 27).

On May 19, 2006, Jewel, Local 710 and Plaintiff met to discuss Plaintiff's Step 5 violation. (Def.'s SOF ¶ 30; Pl.'s Resp. to Def.'s SOF 30). During that meeting, Plaintiff was advised that if he withdrew his Step 4 grievance, he would not be discharged based on the Step 5 violation, but instead would drop back down to Step 4. (Def.'s SOF ¶¶ 30). Plaintiff contends that he was simply told "drop your grievance or your (sic) fired (terminated)," but he was not informed that dropping the grievance would allow him to drop back to Step 4. (Pl.'s Resp. to Def.'s SOF ¶ 30, 33). No resolution was reached, so Plaintiff's employment was terminated effective May 19, 2006, pursuant to the 5-Step Process. (Def.'s SOF ¶ 32, 33; Pl.'s Resp. to Def.'s SOF ¶ 33).

Thorne initiated this lawsuit on April 24, 2007. He filed a Third Amended Complaint on January 13, 2009. In the Third Amended Complaint, Plaintiff not only alludes to the disciplinary process and eventual discharge outlined above, but also mentioned a variety of other actions allegedly taken against him by Jewel, including, among other things, denial of a right to choose certain assignments, issuance of verbal warnings, harassment, threats, and false accusations. (Pl.'s Third Am. Compl. ¶¶ 7-9). The Third Amended Complaint contains four counts: (1) retaliation under Title VII and § 1981, (2) discrimination under Title VII and § 1981, (3) violation of the Illinois Human Rights Act, and (4) retaliatory discharge under Illinois common law. (Third Am. Compl., Dkt. No. 53). On December 18, 2010, Plaintiff and Defendant filed cross-motions for summary judgment, with Plaintiff's motion titled "Plaintiffs Second Summary Judgment Request." (Dkt. Nos. 151, 154).

5

We note, as an initial matter, that there are several problems with the documents submitted by Plaintiff in connection with his Second Summary Judgment Request and in response to Defendant's Motion for Summary Judgment. Not only did Plaintiff fail to comply with the requirements set forth in Local Rule 56.1, but much of what he wrote is unintelligible, with incomplete sentences, disjointed allegations and unclear citations. Moreover, numerous documents on which Plaintiff seems to rely were not included with his filings. Defendant notes that these circumstances have made it quite difficult for Jewel to respond. (Def.'s Resp. to Pl.'s Second Summ. J. Request at 1). The court has also had difficulty trying to identify and understand Plaintiff's arguments and assertions. It would not have been improper for the court to strike Plaintiff's motion and grant Defendant's motion on these grounds alone. See, *e.g., Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001). Nevertheless, based on the premise that courts are to liberally construe the pleadings of individuals who proceed *pro se*, the court studied and considered all filings submitted by the parties to come to the conclusions reached in this opinion.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 277, 248 (1986). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion; instead, the nonmoving party must present definite, competent evidence to rebut the motion for summary judgment. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). In reaching its holding, the court will consider the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

## DISCUSSION

We address each of the four counts set forth in Plaintiff's Third Amended Complaint.

### I. Count I – Retaliation Under Title VII and § 1981

The Seventh Circuit applies the same elements to retaliation claims under Title VII and § 1981. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007)).

"A plaintiff may establish unlawful retaliation using either the direct or indirect method of proof." *Stephens*, 569 F.3d at 786 (citing *Humphries*, 474 F.3d at 404). "Under the direct method, [Plaintiff] must demonstrate that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two." *Stephens*, 569 F.3d at 786 (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008)). "Under the indirect method, the first two elements remain the same, but instead of proving a direct causal link, the plaintiff must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination." *Stephens*, 569 F.3d at 786-87 (citing *Argyropoulos*, 539 F.3d at 733).

Since the record does not show any direct evidence of discrimination, we presume Plaintiff proceeds under the indirect method. "Once a plaintiff establishes the *prima facie* case under the indirect method, the defendant must articulate a nondiscriminatory reason for its action; if he does, the burden remains with the plaintiff to demonstrate that the defendant's reason is pretextual." *Stephens*, 569 F.3d at 787 (citing *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 727, 785 (7th Cir. 2007)).

### A.     *Prima Facie* Case

We first examine the four elements of the *prima facie* case to see if Plaintiff has sustained his initial burden for this retaliation claim.

#### 1.     Statutorily Protected Activity

Plaintiff contends that he was retaliated against both because of the complaints he filed with the EEOC and because of his participation in the building safety committee. There is no dispute that Plaintiff filed three EEOC Charges (No. 210-2003-33683, No. 210-2004-00011 and No. 440-2006-90226). (Def.'s SOF ¶ 7, 8; Pl.'s Second Summ. J. Request at 2; Def.'s Resp. to Pl.'s Second Summ. J. Request at 3). Nor is there any dispute that Plaintiff participated in the building safety committee. (Def.'s SOF ¶ 17). Plaintiff has established this first prong of his *prima facie* case.

#### 2.     Job Performance

As explained above, Plaintiff must show that he was performing his job satisfactorily. *Stephens*, 569 F.3d at 786-87 (citing *Argyropoulos*, 539 F.3d at 733). Plaintiff does not offer any evidence in support of this conclusion. In fact, the record unquestionably leads to the opposite conclusion.

As mentioned earlier, Defendant claims that Thorne was disciplined fifty-two (52) times from the time he was hired until June 30, 2003, when he filed his first EEOC Charge. (Def.'s SOF ¶ 5). Thorne responded by stating that he "[d]isagrees and objects with these write ups," that "they have no merit to the tier (sic) of Facts," and that his "personnel file has been compromised," but he offers no competent evidence or even clear arguments as to why the court should discredit Defendant's description of Thorne's pre-2003 disciplinary history. (Pl.'s Resp. to Def.'s SOF ¶¶ 5, 6).

With respect to the period after Thorne filed the first EEOC Charge, as discussed above, the record indicates that Jewel issued four disciplinary notices to Plaintiff relating to issues other than attendance, including one incident involving falsification of a company document, and another involving inappropriate and threatening statements. (Def.'s SOF ¶¶ 14-16). Plaintiff makes a general objection to this contention, claiming that he believes his personnel file to have been compromised, but he gives no explanation as to why he thinks the file was compromised, what he thinks may have been removed from it, or what he thinks may have been added to it. (Pl.'s Resp. to Def.'s SOF ¶ 16).

Furthermore, as detailed in the Background section, Plaintiff went through all five steps of the 5-Step Process, resulting in his eventual termination, primarily for violations involving improper swiping in and out. Plaintiff disputes portions of these facts, but does so with nothing more than self-serving, vague, and unsupported denials.

Defendant has provided extensive evidence to show that Plaintiff failed to meet his employer's legitimate performance expectations, while Plaintiff has failed to point to any evidence leading to the contrary conclusion.

### 3. Adverse Employment Action

It is unclear precisely what actions Plaintiff alleges as adverse actions taken in retaliation for his having engaged in protected activity.

In Plaintiff's "Second Summary Judgment Request," he states that "harassment occurred" and "harassment continued," providing unclear and incomplete references to various other documents, at least some of which are not included with his motion. (Pl.'s Second Summ. J. Request at 2-3). Plaintiff refers to other situations which he may be trying to claim as adverse employment actions, such as claiming that "PLAINTIFF WAS CALLED INTO OFFICE for OVER SEVERAL HUNDRED MEETINGS WITH MANAGEMENT," "Jewel COMPANY SUPERVISORS WOULD FOLLOW PLAINTIFF IN WASHROOM ROUTINELY (Pl.'s Second Summ. J. Request at 5-6) (emphasis in original). Without additional detail and evidence supporting these allegations, such statements are insufficient to establish the existence of an adverse employment action. Plaintiff alludes to various other instances of alleged harassment in his Third Amended Complaint as well as in his

In Plaintiff's Response to Defendant's Statement of Facts as well as Plaintiff's Third Amended Complaint, Plaintiff refers to various other instances of alleged harassment. (Pl.'s Third Am. Compl. ¶¶ 7-9; Pl.'s Resp. to Def.'s SOF ¶¶ 36-52). The court reviewed all of those materials, and determines that none of the allegations set forth in those sections, either individually or collectively, are severe enough to amount to an "adverse employment action," nor are they supported by sufficient evidence to allow Plaintiff to proceed under those claims.

However, one series of events that is undisputed is the fact that Plaintiff was subjected to the disciplinary steps outlined in the 5-Step Process, resulting in the eventual termination of his employment. There is no doubt that termination of one's employment qualifies as an "adverse

employment action." Therefore, Plaintiff has established this prong of his *prima facie* case with respect to the disciplinary proceedings and resulting discharge on May 19, 2006.

### 4. Similarly Situated Employees

In his "Second Summary Judgment Request," Plaintiff names several employees, presumably in an effort to show that these were similarly situated employees who were treated more favorably than he was. These names include Richard Skrabacz, Frank Pecoraro and Mike Gremp. (Pl.'s Second Summ. J. Request at 4). No specific details are set forth regarding precisely how these employees were similar to Plaintiff and what adverse actions Jewel may or may not have taken against them. Plaintiff stated that he viewed "other employees not showing up to punch out in the designated time frame," but he "does not know if disciplinary was enforced." (Pl.'s Resp. to Def.'s SOF ¶ 29).

With respect to Richard Skrabacz ("Skrabacz"), Defendant acknowledges that Skrabacz failed to swipe in or out for lunch on several occasions, but explained that this was due to the fact that Skrabacz was temporarily assigned to work in the Salvage Building, which did not yet have time clocks. (Def.'s SOF ¶ 28).

The record simply does not provide any competent evidence to show that Plaintiff was treated differently than similarly situated employees.

### B. Defendant's Articulated Non-Discriminatory Reason

In failing to prove satisfactory job performance and identify similarly situated employees who were treated differently, Plaintiff failed to establish two of the four prongs required to make a *prima facie* case of discrimination. However, even assuming Plaintiff had been able to carry this burden, Defendant is able to offer a non-discriminatory reason for Plaintiff's discharge. Namely, Plaintiff reached the fifth of five steps outlined in the established disciplinary

procedures, which results in termination of employment. As discussed earlier, each incident resulting in Plaintiff's escalation in the five steps was clearly explained and supported by competent evidence.

### C. Pretext

Since Jewel offers a legitimate, non-discriminatory reason for terminating Plaintiff's employment, the burden would return to Plaintiff to demonstrate that Jewel's reason is pretextual. *Stephens*, 569 F.3d at 787 (citing *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 727, 785 (7th Cir. 2007)). There no evidence that would suggest that Jewel's explanation is a lie, covering a true motive of retaliation.

There is one factual issue that the parties clearly dispute, and that is the incident that led to the third step of the 5-Step Process. Plaintiff's supervisor, Ryan, gave him a second written warning for taking a 40 minute lunch on November 9, 2005, but Plaintiff maintains that he punched in and out for lunch properly on that occasion. (Def.'s SOF ¶ 23; Pl.'s Resp. to Def.'s SOF ¶ 23). Even if we view this fact in the light most favorable to the Plaintiff – as we are required to do on summary judgment – and presume that Plaintiff *did* swipe in and out for lunch properly on November 9, 2005, this does not amount to a genuine issue of material fact. This single instance of an improper written warning does not help Plaintiff establish his *prima facie* case or show that Jewel's reason for discharging him was pretext. The jury would need to conclude: (1) that the supervisor issued this warning in the hopes that it would result in Plaintiff's eventual discharge (even though he was still two steps away from possible discharge, and when he finally reached the fifth step, his employer tried to save his job), and (2) that the supervisor did this to retaliate against Plaintiff for having filed EEOC Charges and participated in the safety committee. There is simply no support for such an inference.

As Jewel points out, during the years prior to Plaintiff's filing of EEOC Charges, Jewel issued fifty-two (52) disciplinary notices to Plaintiff, fifteen (15) of which related to failure to properly swipe the time clock. (Def.'s SOF ¶¶ 5,6). In the years following Plaintiff's first EEOC Charge, Jewel issued only four (4) disciplinary notices to Plaintiff relating to issues other than attendance. (Def.'s SOF ¶ 16). These trends do not suggest a motivation of retaliation brought about by the filing of EEOC Charges. Plaintiff's response to all of these facts is simply to assert that his personnel files have been compromised, which is a far cry from establishing pretext. (Pl.'s Resp. to Def.'s SOF ¶¶ 5, 6, 16).

Moreover, when the first of the five steps leading to Plaintiff's discharge was taken in August of 2005, that was approximately two years after Plaintiff had filed his EEOC Charges in July and October of 2003. Such a time line does not suggest that the true motive for initiating the 5-Step Process was retaliation.

Nothing in the record indicates that Jewel's reasons for disciplining and eventually discharging Plaintiff were pretextual. Therefore, even if Plaintiff established his *prima facie* case, which he failed to do, he would be unable to carry his final burden of demonstrating pretext. For these reasons, summary judgment must be entered for Jewel on Count I.

## II. Count II – Discrimination Under Title VII and § 1981

"[A]lthough section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009) (quoting *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 940 (7th Cir. 1996)). As with the retaliation claims discussed in the previous section, Plaintiff has the option of proceeding under the direct method or indirect, burden-shifting approach. *McGowan*, 581 F.3d at 579 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973)). Plaintiff states that he has "direct evidence of Intentional discrimination." (Pl.'s Reply to Def.'s Resp. to Pl.'s Second Summ. J. Motion at 1). However, seeing no direct evidence of discrimination in the record, the court studied the parties' filings to see if Plaintiff could establish a *prima facie* case under the indirect method.

Under the indirect method, Plaintiff must show nearly identical elements as were required for the retaliation claim discussed above: "(1) he is a member of a protected class; (2) his job performance met [his employer's] legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated individual outside his protected class was treated more favorably." *Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010) (citing *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750-51 (7th Cir. 2006)). "After making this showing, if [Defendant] counter[s] with legitimate, nondiscriminatory reasons for [its] actions, [Plaintiff] would also have to show that those reasons were pretextual." *Id*.

### A. *Prima Facie* Case

We first look to see if Plaintiff has established the four elements of his *prima facie* case for discrimination.

#### 1. Protected Class

Plaintiff states that he is African-American, a point which Jewel does not dispute. (Pl.'s Second Summ. J. Request at 2; Def.'s Resp. to Pl.'s Second Summ. J. Request at 3). Plaintiff has established that he is a member of a protected class.

#### 2. Job Performance

As discussed in the analysis of Plaintiff's retaliation claim, the record clearly shows a lack of satisfactory job performance. Plaintiff cannot establish this prong of his *prima facie* case.

### 3. Adverse Employment Action

For the same reasons as stated in the corresponding discussion of the retaliation claim, many of the activities alleged by Plaintiff to constitute ongoing "harassment" are insufficient to establish an "adverse employment action," but Plaintiff is able to satisfy this element of the *prima facie* case with respect to the 5-Step Process which led to his eventual discharge.

### 4. Similarly Situated Employees

As explained above with respect to Count I, Plaintiff's retaliation claim, Plaintiff has not clearly identified any similarly situated employees who were treated differently than he was. In fact, with respect to the issue of alleged discrimination based on race, Defendant identified several other similarly situated employees who received the *same* treatment that Plaintiff received. Richard Getches, who is Caucasian, was discharged pursuant to the 5-Step Process because, among other things, he failed to properly swipe the time clock. (Def.'s SOF ¶ 34). Three other individuals who were involved in Step 5 violations participated in negotiations with Local 710, which resulted in the associates *not* being discharged – Matt Davis, who is African-American, James Giblin, who is Caucasian, and Harold Moon, who is African-American. (Def.'s SOF ¶ 35).

As was true for the retaliation claim, the record simply does not support the proposition that similarly situated employees were treated more favorably than Plaintiff.

### B. Defendant's Articulated Non-Discriminatory Reason

Plaintiff failed to establish the same two prongs of the *prima facie* case for discrimination as for retaliation – there is no showing of satisfactory job performance nor any identification of similarly situated employees treated more favorably. Nevertheless, even if we were to assume that Plaintiff had been able to establish these elements, Defendant's non-discriminatory reason

15

for terminating Plaintiff's employment was his clearly documented escalation within the 5-Step Process.

### C. Pretext

Plaintiff has offered no evidence or clear arguments to support the notion that Jewel's reason for firing him was a lie. As mentioned above, Jewel identified at least two other members of Plaintiff's protected class who were treated as well if not better than Plaintiff (Matt Davis and Harold Moon, who negotiated out of a Step 5 discharge), and one member outside of Plaintiff's class who was subjected to the same adverse action of being discharged (Richard Getches). This evidence supports the notion that race is not a factor in Jewel's disciplinary proceedings, and Plaintiff has failed to provide any evidence that race may have played a part in these decisions.

In summary, Plaintiff failed to carry his initial burden of establishing a *prima facie* case of discrimination, and even if he had, his claim would still fail, because he cannot show that Jewel's reason for discharging him was pretext. For these reasons, summary judgment must be entered for Jewel with respect to Count II.

## III. Count III – Violation of the Illinois Human Rights Act

"Judicial review is . . . available under the [Illinois Human Rights Act] only after the Human Rights Commission has issued a final order on a complaint." *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 458 (7th Cir. 1994) (citing 775 ILCS 5/8-111(A)(1); *Mein v. Masonite Corp.*, 485 N.E.2d 312, 314-15 (Ill. 1985)). Since there is no indication that Plaintiff ever filed a complaint with the Human Rights Commission, this court is without the authority to adjudicate this claim, and Count III must be dismissed.

## IV. Count IV – Retaliatory Discharge Under Illinois Common Law

With respect to Plaintiff's state law claim for retaliatory discharge, this court must consider whether to exercise supplemental jurisdiction over this pendant claim after having dismissed Plaintiff's two federal claims. *Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008) (citing 28 U.S.C. § 1367(c)(3)). The Seventh Circuit has held,

> [T]he district courts should exercise this discretion to relinquish jurisdiction over state law claims that remain after the dismissal of federal claims unless any of the following three circumstances exist: (1) the state law claims may not be re-filed because a statute of limitations had expired, (2) substantial judicial resources have been expended on the state claims, or (3) it is clearly apparent how the state claims are to be decided.

*Dargis*, 526 F.3d at 990 (citing *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007)). It is clearly apparent how Plaintiff's retaliatory discharge claim is to be decided, so this court will exercise supplemental jurisdiction to rule on that claim.

Under Illinois common law, a plaintiff may establish a claim of retaliatory discharge if he shows: "(1) that [he] was discharged (2) in retaliation for [his] activities (3) in contravention of a clearly mandated public policy." *Benders v. Bellows and Bellows*, 515 F.3d 757, 766 (7th Cir. 2008) (citing *McGrath v. CCC Info. Servs., Inc.*, 731 N.E.2d 384, 388 (Ill. App. Ct. 2000)). *See also Arres v. IMI Cornelius Remcor, Inc.*, 333 F.3d 812, 813 (7th Cir. 2003). Plaintiff has established the first of these three elements, but fails to establish the other two.

With respect to the second element, proving that Plaintiff's employer retaliated against him, this arguments for all of the reasons set forth in the section discussing Count I, Plaintiff's claim of retaliation under Title VII and § 1981. There is simply no competent evidence in the record that suggests Plaintiff was discharged in retaliation for engaging in any type of protected activity.

17

Furthermore, with respect to the third element, Plaintiff stated in his Third Amended Complaint that his "discharge violates Illinois public policy," but he failed to make any additional argument about what specific public policy has allegedly been violated.

Since Plaintiff cannot establish two of the three elements of this claim, the claim must fail, and judgment must be entered for Jewel on Count IV.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment [151] is granted, and Plaintiff's motion for summary judgment [154] is denied. Judgment is entered for Jewel with respect to Counts I, II and IV. Count III is dismissed for lack of subject matter jurisdiction. This case is hereby terminated. This is a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: June 8, 2010